burdened with this accumulation of ice and snow, without any attempt to make it suitable for the use of those traveling over it. The fact that there was a slight fall of snow the day the plaintiff slipped does not raise a cause for the accident independently of the long-standing snow and ice formation, within Taylor v. City of Yonkers, 105 N. Y. 202, 11 N. E. 642, and Grant v. Railroad Co., 133 N. Y. 657, 31 N. E. 220. In those cases there was a steep grade, and it was left to the jury to speculate whether the accident was due to the original fall of snow, or to that which had recently fallen; and, if to the latter, confessedly, no liability followed. Here the street was level and even, but the packed collected snow created a dangerous condition, amounting to an obstruction, and that condition was not relieved or added to materially by the slight coating of snow which covered it the day of the accident to plaintiff. The circumstance that plaintiff knew the condition of the walk did not make him chargeable, as matter of law, with contributory negligence. He still had a right to use it, exercising the greater caution required by reason of his knowledge; and whether he fulfilled that burden was for the jury to determine. McPherson v. City of Buffalo, 13 App. Div. 502, 43 N. Y. Supp. 658; Stone v. City of Poughkeepsie, 15 App. Div. 582, 44 N. Y. Supp. 609; Pomfrey v. Village of Saratoga Springs, 104 N. Y. 460, 11 N. E. 43. The plaintiff testified that he "was going along just as carefully as I could, and looking down, and saw this dangerous condition there. Saw this oval shape there next to the rail, and was walking in the center, as near as I could, to avoid that." If this is a true statement of his conduct as he was passing along this walk, the jury would be justified in finding that he exercised care commensurate with his knowledge that the walk was slippery. While there is evidence tending to show a different state of facts than those presented, the plaintiff, as the case is now before us, is entitled to the construction most favorable to him, and from that view point the nonsuit was error.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except McLENNAN, J., who dissents.

---

(30 Misc. Rep. 722.)

### NOSTER v. METROPOLITAN ST. RY. CO.

(Supreme Court, Trial Term, New York County. March 20, 1900.)

1. WITNESSES—CREDIBILITY—IMPEACHMENT.

Defendant, in contempt proceedings for furnishing witnesses with false typewritten statements of what they were expected to testify to, could not contend that the witnesses who testified against him were unworthy of belief, when they were the same persons he intended to use as credible witnesses.

2. CIVIL CONTEMPTS—WHEN PUNISHABLE.

Under Code Civ. Proc. § 14, authorizing punishment of civil contempts whereby the rights or remedies of any party to an action are impaired or injured, misconduct in furnishing plaintiff's witnesses with false type-

written statements of what they were expected to testify to cannot be punished as a civil contempt on defendant's motion, where defendant succeeded at the trial.

Action by Kiegdy Noster, administrator, etc., against the Metropolitan Street-Railway Company. On motion by defendant to punish Robert J. Irwin for contempt. Denied.

Goodwin, Thompson & Vanderpoel, for the motion.

R. G. Dilworth and Wm. Barnes, opposed.

McADAM, J. The defendant has applied for an order adjudging Robert J. Irwin guilty of contempt for making and delivering to Paul Saffron, George Jenkins, and Arthur T. Webb, witnesses who were to testify for the plaintiff, typewritten statements of what they were to swear when called at the trial, said statements being contrary to the truth, and having been furnished to aid the plaintiff in obtaining a verdict by false and perjured testimony. The charge is a serious one. It appears that the plaintiff, as administratrix of her sister, brought an action to recover $25,000 from the defendant for negligently causing her sister's death, on the allegation that the motorman stopped the car at Fourth avenue, near Eleventh street, to permit the decedent to alight, and that, without giving her an opportunity to do so, he suddenly started the car, throwing her to the ground, thereby causing her death. The strong preponderance of evidence given at the trial established that the charge of negligence was untrue; that decedent, who was engaged in conversation with her sister, on suddenly discovering the proximity of the car to her home, jumped up in her seat, and got on the side step, and fell off the car, without either signaling the conductor or waiting for the car to come to a standstill. Irwin was in the vicinity of the accident at the time, and, discovering that the girl had been injured, gave her a card containing the name of the attorney who subsequently brought the action, and requested her to place the cause in his hands. Irwin then busied himself hunting up witnesses to the accident. Irwin testified that his business was that of "accident adjuster," and, according to his explanation of the term, he devotes his time to discovering accidents, and inducing the injured persons to go to a lawyer of his selection that suit may be brought for damages. Prior to the trial, Irwin had prepared typewritten statements for the witnesses Saffron, Jenkins, and Webb, containing a succession of events, which, if true, made out a clear case of negligence against the defendant, every fact necessary to a recovery being stated with precision. Webb and Jenkins repudiated the scheme, and testified that the typewritten papers did not contain a statement of the facts as they occurred, or as they had detailed them to Irwin; but that Irwin gave them the papers, telling them to refresh their memories therefrom, so as to know what to say at the trial. Each was to have $50 if the case was won or a good settlement had. Irwin admits giving the witnesses the typewritten statements, but claims that they conformed to the facts as the witnesses had detailed them to him. It will not do to hold that the witnesses who have testified against Irwin are unworthy of belief. They are the same persons he intended to use as credible witnesses against the defend-

ant. If they are of bad, or even doubtful, character, Irwin ought to have kept away from them.. The methods employed have become so common in New York, particularly in negligence cases, that they are tolerated complaisantly, and scarcely made the subject of comment, while in the commonwealth of Pennsylvania the courts have thundered forth their condemnation of accident adjusters, runners, and lawyers who, through their agency, foment litigations, in language too vigorous to be misunderstood. See Appeal of Maires, 189 Pa. St., at page 109, 41 Atl. 988. The court believes that the plaintiff's attorney was imposed upon, and he is exonerated from censure, but the court is bound to disapprove the methods of the adjuster as detrimental to the pure administration of justice. Experience has demonstrated that, whether in the police or the higher courts, the runner lends neither dignity nor character to the legal profession, whose members generally suffer more or less from association with him. Irwin was clearly the instigator of the suit, the procurer of the evidence to maintain it, and, if the plaintiff had succeeded at the trial, it might have been claimed, with much force, that he was guilty of misconduct, by which the rights of the defendant were defeated, impaired, and prejudiced, and hence guilty of a civil contempt. Code Civ. Proc. § 14. But, as the defendant succeeded at the trial, such right to punish does not exist under the Code provision. On this ground the application will be denied, but without costs.